1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  ROBERT BARRON,                          1:10-cv-01489-DLB (HC)

10              Petitioner,                FINDINGS AND RECOMMENDATION
                                           REGARDING PETITION FOR WRIT OF
11        v.                               HABEAS CORPUS

12                                         [Doc. 1]
    JAMES D. HARTLEY,
13
                Respondent.
14  _____/

15
16        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                              BACKGROUND

19        Petitioner is currently in the California Department of Corrections and Rehabilitation

20  (CDCR) following his conviction of second degree murder.  Petitioner is serving a sentence of

    nineteen years to life.
21
22        In the instant petition, Petitioner does not challenge the validity of his conviction; rather,

23  he challenges the Board of Parole Hearings 2008 decision finding him unsuitable for release.

24        On February 25, 2009, Petitioner filed a petition for writ of habeas corpus in the Los

25  Angeles County Superior Court.  The petition was denied in a reasoned decision on May 13,

    2009.
26
27  ///

28  ///

Petitioner filed petitions for writ of habeas corpus in the California Court of Appeal, Second Appellate District and California Supreme Court.  Both courts summarily denied the petitions.

Petitioner filed the instant petition for writ of habeas corpus on August 18, 2010. Respondent filed an answer to the petition on October 26, 2010, and Petitioner filed a traverse on November 22, 2010.

STATEMENT OF FACTS

At the time of the incident, Petitioner and his wife, Sharon (the victim), were having marital problems, and she had moved out to her parents' home.  On the night of the offense, Petitioner went to victim's parents home to speak with the victim.  As Petitioner passed the victim's parents, they noticed he had his right hand in his right pocket.  A short time later, the victim's father heard his daughter scream "Dad" and then heard a single gunshot.  Sharon's father found the victim lying on the floor.  Sharon's mother called 9-1-1 and her grandson (the victim's and Petitioner's son) to let him know Petitioner had a gun.  The victim's son stated that earlier in the evening Petitioner left the house in a depressed mood and returned minutes later in a "very happy mood."  The son heard Petitioner going through the master bedroom closet at approximately 7:40 p.m. that evening.  While the son was on the phone with his grandmother, he heard a loud pop and his grandmother yelling.  The victim's mother saw Petitioner return to his vehicle with a gun in his hand.  Petitioner then entered his home with the gun and walked back outside without it.  When Petitioner was arrested, he stated "she was going to leave me.  I just lost my head."  The victim was transported to the hospital where she was pronounced dead as a result of a single gunshot wound to the chest.

DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769

2

(5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in
light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71;Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to

or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     <u>Review of Petition</u>

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  <u>Hayward v. Marshall</u>, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 371 (1987); <u>Pearson v. Muntz</u>, 606 F.3d 606, 609 (9th Cir. 2010) (citing <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); <u>Cooke v. Solis</u>, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  <u>Bd. of Pardons v. Allen</u>, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to
> the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

> (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

> (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

> (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

> (5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

> (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

> (2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

> (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

> (4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

> (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner

5

suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

6

although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.     Last Reasoned Decision

The Los Angeles County Superior Court issued the following last reasoned decision finding some evidence supported the Board's decision:

The record reflects that on February 12, 1992, the Petitioner shot and killed his estranged wife, Sharon Barron. The victim had been living with her parents, following marital problems between her and the Petitioner. On the day of the murder, the Petitioner broke into a safe to obtain a handgun that his wife had previously locked in the safe. He then drove over to the victim's parents' home and asked to speak with her. The Petitioner shot the victim once in the chest at close range, killing her. He then walked out of the house and returned to his home. Police reports indicated that when the Petitioner was arrested shortly after the shooting, he told them that, "she was going to leave me. I just lost my head." The reports also indicated that the Petitioner told police that he loaded the gun before leaving to confront the victim and that he cocked the gun during the argument that ensued. The officers did not believe the Petitioner was intoxicated at the time of his arrest and did not test his blood-alcohol level at the time.

The Petitioner claims that he did not intend to kill his wife, but brought the gun in order to prevent her from walking away from him while they discussed

their martial problems.  He also claims that when the gun fired, he only saw the flash from the muzzle and did not see the victim fall, so he thought he merely shot at the wall.  He further told the Board that he was extremely intoxicated at the time of the offense, so that he does not remember actually firing the shot.

The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on September 12, 2008.  The Petitioner was denied parole for two years.  The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety.  The Board based its decision on several factors, including his commitment offense, the Petitioner's lack of insight into the offense and his psychological report.

The Court finds that there is some evidence to support the Board's finding that the offense was carried out in a dispassionate and calculated manner.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B).  The record indicates that the Petitioner broke into a safe to retrieve the murder weapon and sought out the victim to confront her with the gun.  These actions were planned, deliberate, dispassionate, and calculated.  After a long period of time, a commitment offense may no longer indicate a current risk of danger to society in light of a lengthy period of positive rehabilitation.  See *Lawrence*, *supra*, 44 Cal.4th at 1211.  However, as discussed, below the Petitioner's version of the offense and his psychological report indicate that he lacks insight and maintains a similar mental state as he did at the time of the offense.  In cases, such as in this one, where other factors indicate a lack of rehabilitation, the aggravated circumstances of the offense may provide some evidence of current dangerousness, even decades after it is committed.  *Id*. at 1228.

The Court also finds that there is some evidence to support the Board's finding that the Petitioner lacks insight into the offense.  Although the Petitioner claims that he did not intentionally shoot his wife and that he does not remember firing the actual shot, the police reports and the Petitioner's own actions and statements directly contradict his assertions.  Further, the Petitioner's psychological report indicated that he demonstrated no understanding of the causative factors leading to the offense, speaking mostly of the victim's shortcomings.  The report also noted that the Petitioner provided no spontaneous statements of remorse and when prompted only responded generally, by telling the psychologist that taking a life is wrong.  The report concluded that the Petitioner's continued lack of insight into himself and the offense would be problematic should he enter into a relationship with another woman upon his release and that he presents a moderate likelihood of becoming involved in a violen[t] offense if released.

An inmate's claim that his offense is unintentional may be evidence to support a finding of unsuitability if it is supported by other evidence in the record, such as evidence in the record that directly refutes the claim or the psychological report's findings.  See *In re Shaputis* (2008) 44 Cal.4th 1241, 1260.  Here, as in *Shaputis*, evidence in the record directly contradicts the Petitioner's version of the offense and his psychological report clearly supports the Board's finding that he continues to lack insight.

The Board also considered the Petitioner's plan to live with family members, despite their possible role in attempting to sway witness testimony for his trial.  While this factor, alone, may not justify a finding of unsuitability, the Board may properly consider it.  Cal. Code Regs., tit. 15, § 2402(b).

8

1    The Board also considered the Petitioner's post-conviction gains,
     including his participation in Criminon, his vocations in small engine repair and
2    mill and cabinet, his participation in life skills workshops, as well as his eight
     years of participation in Alcoholics Anonymous.  However, they still concluded
3    that the Petitioner would pose an unreasonable risk to public safety.  Penal Code
     3041(b).  The Court finds that there is some evidence to support this
4    determination because the Petitioner's continued lack of insight into his offense
     and his unchanged mental state regarding the offense and the victim provide a
5    nexus between the offense and his current dangerousness.  *Shaputis*, *supra*, 44
     Cal.4th at 1260.
6

7    B.    2008 Board Hearing

8    At the September 12, 2008 hearing, the Board found Petitioner posed an unreasonable

9    risk to public safety if released based on the calculated and dispassionate nature of the

10   commitment offense, lack of insight, unfavorable psychological evaluation, and questionable

11   parole plans.

12   After retrieving and loading his firearm, Petitioner armed himself with his gun so his wife

13   would be forced to talk to him.  Petitioner arrived at the victim's parents' home and approached

14   the victim who was watching television.  When an argument ensued, Petitioner shot his wife in

15   the chest at close range, killing her.  The incident took place essentially in front of the victim's

16   parents who were in the next room and while the grandmother was on the phone with the

17   couple's son.  The Board found the motive of jealously, rage, or possessiveness inexplicable in

18   relation to the killing of his estranged wife.  Given these circumstances, the offense was carried

19   out in a dispassionate and calculated manner and supports the finding that Petitioner remains an

20   unreasonable risk to public safety if released.

21   The psychological report was not favorable for release.  The most recent psychological

22   report by Doctor Twohy assessed Petitioner to be in the moderate range for future violence.  The

23   doctor also indicated that Petitioner did not demonstrate an understanding of any other causative

24   factors beyond acknowledging that he was an alcoholic at the time.  The doctor stated that

25   Petitioner "talked mostly about his wife's shortcomings, including some of her actions before he

26   knew her rather than his own behaviors and choices."  The doctor determined that Petitioner had

27   not come to terms with the underlying causes of his crime and further insight into the underlying

28   causes of his violence was necessary.  Such finding was properly considered by the Board and

1    superior court as a factor in determining whether Petitioner remains a current risk to public

2    safety.  See e.g. Hayward, 603 F.3d at 563 (psychologist's evaluation that prisoner posed a "low

3    to moderate" risk of future violence, coupled with evidence that offense was particularly

4    aggravated, is sufficient evidence to demonstrate future dangerousness to support denial of

5    parole.)

6        The Board also expressed concern regarding Petitioner's desire to reside with family

7    members who may have attempted to persuade witness testimony in favor of Petitioner at trial.

8    Although this finding alone does not justify the denial of parole, it was properly considered

9    among the other factors in finding Petitioner unsuitable for release.

10        After considering the factors in support of suitability, the Board concluded that the

11   positive factors did not outweigh the factors in support of unsuitability, and the superior court's

12   determination that the circumstances of the commitment offense, prior criminal history, and

13   unfavorable psychological evaluation demonstrate Petitioner continues to remain an

14   unreasonable risk to public safety is not an unreasonable application of the some evidence

15   standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. §

16   2254(d).

17                              RECOMMENDATION

18        Based on the foregoing, it is HEREBY RECOMMENDED that:

19        1.       The instant petition for writ of habeas corpus be DENIED; and

20        2.       The Clerk of Court be directed to enter judgment in favor of Respondent.

21        This Findings and Recommendation is submitted to the assigned United States District

22   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

23   Local Rules of Practice for the United States District Court, Eastern District of California.

24   Within thirty (30) days after being served with a copy, any party may file written objections with

25   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

26   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

27   and filed within fourteen (14) days after service of the objections.  The Court will then review the

28   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**   **December 30, 2010**             _____/s/ **Dennis L. Beck**_____
                                            UNITED STATES MAGISTRATE JUDGE